**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

CINDY KOONS,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 12-3076-MWB

**MEMORANDUM OPINION AND ORDER REGARDING RESPONDENT'S MOTION TO DISMISS AS UNTIMELY AND PETITIONER'S MOTION FOR SUMMARY JUDGMENT ON EQUITABLE TOLLING**

_____

**TABLE OF CONTENTS**

*I.*    *INTRODUCTION..................................................................2*
    *A.*    *Procedural Background ....................................................2*
    *B.*    *Factual Background .........................................................3*
    *C.*    *Arguments Of The Parties .................................................7*
*II.*   *LEGAL ANALYSIS ..............................................................9*
    *A.*    *Standards For Summary Judgment .....................................9*
    *B.*    *Standards For Equitable Tolling.......................................10*
    *C.*    *Koons's Equitable Tolling Claim .....................................11*
        *1.*    *"Extraordinary circumstances" ..............................11*
        *2.*    *"Diligence"........................................................14*
        *3.*    *Disposition........................................................18*
*III.*  *CONCLUSION ..................................................................19*

## I. INTRODUCTION

### A. Procedural Background

In her October 9, 2012, *pro se* Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (docket no. 1), petitioner Cindy Koons asserts that her trial counsel provided ineffective assistance. More specifically, she claims that her trial counsel was ineffective in failing to file an appeal after sentencing, despite her request that he do so; failing to challenge the actual quantity and purity of the methamphetamine involved in the charged offenses; failing to challenge the prosecution's statements about her "position" in the alleged methamphetamine conspiracy; and being "unavailable" for periods of time, leaving her to wonder about the status of her case.

The case was previously before me on the respondent's January 1, 2013, Motion To Dismiss (docket no. 8), in which the respondent sought dismissal of Koons's § 2255 Motion as untimely pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Koons filed a Resistance (docket no. 10), on February 15, 2013, conceding that her § 2255 Motion was not filed within one year of the date of the judgment of conviction, but asserting that the statute of limitations on her § 2255 Motion should be equitably tolled, owing to the conduct of her trial counsel, which prevented her from timely filing her § 2255 Motion.[1] Upon finding that Koons had attached several exhibits to her Resistance that I ordinarily could not consider on a Rule 12(b)(6) motion and that Koons had injected the issue of equitable tolling, by Order (docket no. 14), filed July 16, 2013,

---

[1] The respondent also filed a Reply (docket no. 13) in further support of its Motion To Dismiss on March 8, 2013.

2

I reserved ruling on the respondent's Motion To Dismiss, converted Koons's Resistance into a motion for summary judgment pursuant to Rules 12(d) and 56 of the Federal Rules of Civil Procedure, and set a schedule for Koons to supplement her converted motion and for further briefing.

Koons filed her Motion For Summary Judgment Re: Equitable Tolling Issue (docket no. 15) on July 30, 2013, including a Statement Of Undisputed Facts and an Appendix. The respondent filed a Response (docket no. 18) on August 26, 2013, in which the respondent did not dispute Koons's Statement Of Undisputed Facts, but asserted a few additional facts that the respondent asserted were also undisputed and material. Koons filed her Reply (docket no. 19), in further support of her Motion For Summary Judgment, on September 10, 2013, responding to the respondent's additional facts and arguments. The respondent's Motion To Dismiss and Koons's Motion For Summary Judgment are now fully submitted.[2]

### B. Factual Background

The undisputed facts on which Koons's Motion For Summary Judgment is based are the following. On June 21, 2011, Koons was sentenced, in Case No. CR 10-3048-MWB, to 240 months of imprisonment on her guilty plea to a charge of conspiracy to distribute methamphetamine, after a prior felony drug conviction, in violation of 21 U.S.C. §§ 846 and 851, and judgment was entered accordingly on June 22, 2011. Koons did not appeal her conviction or sentence.

---

[2] Neither party requested oral arguments on the pending motions in the manner required by applicable local rules. I have not found oral arguments to be necessary, in light of the parties' written submissions.

3

After her sentencing, Koons retained attorney James Clarity of Spirit Lake, Iowa, to file a § 2255 Motion on her behalf. Clarity confirmed his representation of Koons and confirmed that he would timely file a § 2255 Motion on her behalf, by letter dated March 30, 2012. Clarity's March 30, 2012, letter stated, in its entirety,

> I received your note of March 25.
>
> I have had trouble with the CORELINK e-mail program. I am going to have my IT guy look at it this weekend.
>
> I was able to get in once but it was before you e-mailed me.
>
> I am happy to help you with your file.
>
> I need the name of your unit manager and the phone number so that I can arrange a visit at [sic] soon as possible.
>
> I have contacted [your trial counsel] about getting a copy of his file. I will get it.
>
> *We will get the motion timely filed and we will see what happens.*
>
> It sounds like you are doing well.

Petitioner's Appendix at 1 (Exhibit A) (emphasis added). Clarity was aware of the impending deadline to file the § 2255 Motion, because in a letter also dated March 30, 2012, to Koons's trial counsel, Clarity stated, "I would like to get the file as soon as possible because the one year anniversary of [Koons's] sentencing is June 21, 2012." That letter was copied to Koons. Petitioner's Appendix at 2 (Exhibit B).

Clarity's March 30, 2012, letter to Koons did not state that, on March 8, 2011, his license to practice law was suspended by the Iowa Supreme Court pending further order of that court. *See* Petitioner's Appendix at 5-7 (Exhibit D). The record does not reflect whether that suspension was ever lifted. Clarity's license to practice law was again suspended by the Iowa Supreme Court on May 25, 2012, again until further order of that court. *See* Petitioner's Appendix at 8-10 (Exhibit E).

4

On June 15, 2012, notwithstanding that he was then suspended from practicing law, Clarity sent another letter to Koons, again guaranteeing that her § 2255 Motion would be timely filed. That letter stated, in its entirety,

> *Your Petition for Sentencing Relief will be filed before June 21, 2012.*
>
> A 2455 [sic] Motion may affect a Rule 35 Motion prepared by [the] United States Attorney. I hold out little hope that the U.S. Attorney will file such a motion, but we will see.
>
> *I am taking a leave of absence and have turned your file over to Pamela Wingert at 712-336-3911.* Her address is:
>
>> Pamela A. Wingert
>> Wingert Law Office
>> 1212 18th Street
>> Spirt Lake, IA 51360
>
> Pam is very experienced in Federal criminal law and *she is going to handle the file while I am gone*.
>
> I am quite sure that it won't even come up for hearing until this fall due to the debriefing and information that the prosecutor has to check out and verify.
>
> I will see that you receive a copy and I will get back to you shortly.

Petitioner's Appendix at 3-4 (Exhibit C) (emphasis added).

Notwithstanding Clarity's promises, no § 2255 Motion was filed on Koons's behalf on or before June 21, 2012. Clarity's suspension was again confirmed by order of the Iowa Supreme Court on June 28, 2012. *See* Petitioner's Appendix at 11-12 (Exhibit F) (Order of the Iowa Supreme Court dated June 28, 2012, indicating that Clarity had waived a show cause hearing and that the temporary suspension of his license to practice law would continue pending further order of that court). Koons eventually signed and

submitted her *pro se* § 2255 Motion on October 1, 2012, and it was filed by the Clerk of Court on October 9, 2012.

The respondent asserts that the following facts are also undisputed. The respondent asserts that Koons claims that she was actively working with Clarity in 2011 to prepare a § 2255 Motion, and that Clarity notified Koons by letter dated *June 21, 2012,* that her case was transferred to attorney Pamela Wingert. *See* Respondent's Statement Of Undisputed Facts In Response To Petitioner's Motion For Summary Judgment Re: Equitable Tolling Issue (docket no. 18-1), ¶ 2. The only letter in the record from Clarity to Koons informing Koons that her file had been transferred to Ms. Wingert, however, is dated *June 15, 2012*, not June 21, 2012. Petitioner's Appendix at 3-4 (Exhibit C). The respondent alleges that Koons "discussed the case with Ms. Wingert *on that same date* (telephone conference call)," *see* Respondent's Statement Of Undisputed Facts In Response To Petitioner's Motion For Summary Judgment Re: Equitable Tolling Issue (docket no. 18-1), ¶ 2 (emphasis added), presumably meaning June 21, 2012, but that Koons did not retain Ms. Wingert. *Id.* The respondent cites nothing in support of this allegation. The respondent also alleges that there were sixteen days from Koons's conversation with Ms. Wingert until the actual deadline for filing her § 2255 Motion, which was July 7, 2012. Again, the respondent cites nothing in support of its allegation about the actual deadline for Koons's § 2255 Motion, although July 7, 2012, appears to be the date that the judgment in her criminal case became final, because no appeal was filed. More importantly, this allegation indicates that the respondent understood—and Koons admits—that Koons did not consult with Ms. Wingert until June 21, 2012. The respondent also alleges that there were approximately three months (110 days) from Koons's notice from Clarity that he was "taking a leave of absence" and her conversation with Ms. Wingert until Koons actually filed her *pro se* § 2255 Motion.

Koons responds that Clarity's letters to her and to her trial counsel dated March 30, 2012, indicated that the due date for her § 2255 Motion was June 21, 2012, *see* Petitioner's Appendix at 1 (Exhibit A); Petitioner's Appendix at 2 (Exhibit B), and that Clarity reiterated that deadline in his June 15, 2012, letter to her advising her that her file had been "turned over" to Ms. Wingert, *see* Petitioner's Appendix at 3 (Exhibit C). Koons contends that she was not aware that she actually had approximately another two weeks to file her § 2255 Motion, because the date that the judgment became final in her criminal case was July 7, 2011. Thus, Koons alleges that, when June 21, 2012, passed, she believed that the deadline for her § 2255 Motion had come and gone. Koons admits that she did consult with Ms. Wingert on June 21, 2012, and that she did not hire Ms. Wingert to file the motion that day. Koons alleges that, consequently, she was "on her own" after June 21, 2012, until she filed her *pro se* § 2255 Motion on October 9, 2012.

### C. *Arguments Of The Parties*

In support of her Motion For Summary Judgment, Koons argues that the undisputed evidence shows that she was affirmatively misled by Clarity, the attorney that she had hired and trusted to file her § 2255 Motion. She points out that, several months before the deadline for filing her § 2255 Motion, she corresponded with Clarity and that he assured her that her § 2255 Motion would be timely filed. She points out that shortly before the deadline—or what Clarity had led her to believe was the deadline—Clarity again assured her that her § 2255 Motion would be timely filed, even though he was taking a "leave of absence," because he had obtained substitute counsel for her. She points out that Clarity never told her that his license to practice law had been suspended. Thus, she argues that she diligently pursued the filing of her § 2255 Motion, but that Clarity's misconduct and misrepresentations kept her from timely filing it.

7

In its Response to Koons's Motion For Summary Judgment, the respondent argues that Koons had notice of Clarity's inability to file her § 2255 Motion on or about June 21, 2012, so that she had sixteen days from that date until July 7, 2012, the anniversary of the date on which judgment in her criminal case became final, to file a § 2255 Motion, either *pro se* or with the assistance of Ms. Wingert, to whom Clarity had directed her. The respondent argues that, by the time that Koons discovered Clarity was not going to file her § 2255 Motion, even assuming that Koons could not reasonably have either filed her § 2255 Motion on time or requested an extension of time to do so, Koons has not explained why it took her another three months to file her *pro se* § 2255 Motion. Thus, the respondent argues, even conceding that Clarity's misconduct might originally have prevented Koons from filing a timely § 2255 Motion, Koons has failed to show that she was diligent in filing such a motion, so that she is not entitled to equitable tolling to the date that she actually filed her *pro se* § 2255 Motion.

In reply, Koons argues that she had no reason to believe that her deadline to file her § 2255 Motion was anything other than the date that Clarity had told her, June 21, 2012. Thus, she argues that when she could not hire Ms. Wingert to file her § 2255 Motion on June 21, 2012, she reasonably believed that her opportunity to file the § 2255 Motion had come and gone. She contends that a delay of three months before she actually filed her *pro se* § 2255 Motion is not unreasonable under these circumstances. She points out that, in *United States v. Wynn*, 292 F.3d 226, 228-29 (5th Cir. 2002), the Fifth Circuit Court of Appeals implicitly recognized that an inmate's delay from August to January before filing a § 2255 Motion was not unreasonable.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burden, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

> 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . . "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

### B. Standards For Equitable Tolling

The "governing law" against which the parties' factual contentions must be measured on summary judgment in this case, *see Anderson*, 477 U.S. at 248, is the law of "equitable tolling" of the statute of limitations for § 2255 motions. The Eighth Circuit Court of Appeals recently summarized the context and requirements for "equitable tolling," as follows:

> We begin by noting the Antiterrorism and Effective Death Penalty Act of 1996 imposed, among other things, a one-year statute of limitations on motions by prisoners under section 2255 seeking to modify, vacate, or correct their federal sentences. *See Johnson v. United States*, 544 U.S. 295, 299, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005). The one-year statute of limitation may be equitably tolled "only if [the movant] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

10

in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)) (applicable to section 2254 petitions); *see also United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir.2005) (applying same rule to section 2255 motions). We review this claim de novo. *See Martin*, 408 F.3d at 1093.

*Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013).

### C. *Koons's Equitable Tolling Claim*

I will consider the two prongs of Koons's equitable tolling claim in turn. I will begin with the "extraordinary circumstances" prong, however, rather than the more hotly contested "diligence" prong. *See id*. (considering "extraordinary circumstances" before considering "diligence").

#### 1. *"Extraordinary circumstances"*

As the Eighth Circuit Court of Appeals has also explained,

> An attorney's negligence or mistake is not generally an extraordinary circumstance, however "serious attorney misconduct, as opposed to mere negligence, 'may warrant equitable tolling.'" *Martin*, 408 F.3d at 1093 (quoting *Beery v. Ault*, 312 F.3d 948, 952 (8th Cir.2002)). For example, the Supreme Court remanded for a lower court to make an extraordinary-circumstances determination where the attorney "failed to file [the client's] federal petition on time despite [the client's] many letters that repeatedly emphasized the importance of his doing so," "apparently did not do the research necessary to find out the proper filing date," "failed to inform [the client] in a timely manner about the crucial fact that the Florida Supreme Court had decided his case," and "failed to communicate with his client over a period of years." *Holland*, 130 S.Ct. at 2564.

11

> Comparatively, we have found extraordinary circumstances in a situation where the movant's attorney "consistently lied to [the movant] and his wife about the filing deadline; repeatedly lied to [the movant] and his wife about the status of [the movant's] case; refused to communicate with [the movant] or his family; neglected to file any documents, belated or not, on [the movant's] behalf; and failed to return any of [the movant's] paperwork to him despite repeated requests and then demands." *Martin*, 408 F.3d at 1095.

*Muhammad*, 735 F.3d at 816.

The court in *Muhammad* concluded that the prisoner in that case had not alleged circumstances that came close to those in *Holland* or *Martin*, because, despite the attorney's alleged initial statement that she would file a § 2255 Motion for the prisoner, the attorney then quit communicating with the prisoner; the attorney did not lie to the prisoner about the deadlines for filing his motion, or repeatedly tell him that she would file the motion; the attorney did not fail to communicate critical information about the prisoner's case; and the attorney did not withhold from the prisoner necessary paperwork to prepare the motion. *Id*. Furthermore, while the court did not "condone" the attorney's failure to respond to the prisoner's attempts to contact her, the court concluded that the attorney's actions did not amount to "extraordinary circumstances." *Id*.

Here, it does not appear that the respondent genuinely disputes Koons's contention that Clarity's misconduct was sufficient to constitute an "extraordinary circumstance," and I conclude that, as a matter of law, Clarity's misconduct was an "extraordinary circumstance." Here, Clarity assured Koons on more than one occasion—in his March 30, 2012, letter and his June 15, 2012, letter—that he would make sure that her § 2255 Motion was timely filed, *either by him or by Ms. Wingert*. Indeed, in his June 15, 2012, letter, Clarity did not simply suggest that Koons find another attorney to file her § 2255 Motion, but stated that he had "turned over [Koons's] file" to Ms. Wingert and represented that Ms. Wingert "[wa]s going to handle the file while [he] [was] gone."

12

Petitioner's Appendix at 3-4 (Exhibit C). *Cf. Martin*, 408 F.3d at 1093 (holding that an attorney's repeated lies and deceptions about the status of the prisoner's case were "extraordinary circumstances"); *and compare Muhammad*, 735 F.3d at 816 (noting the lack of such repeated assurances from counsel). In light of these assurances, there was no reason for Koons to believe that Ms. Wingert would *not* file her § 2255 Motion by the June 21, 2012, deadline or that Koons was required to contact Ms. Wingert prior to that date to ensure that Ms. Wingert would file Koons's § 2255 Motion, and the respondent has either failed or simply not attempted to generate a genuine issue of material fact otherwise. *See Torgerson*, 643 F.3d at 1042-43. On June 15, 2012, Clarity also misrepresented the reason that he was not filing Koons's § 2255 Motion, stating he that he was "taking a leave of absence," when he was, in fact, suspended from practicing law—a failure to communicate critical information about the prisoner's case, *see Muhammad*, 735 F.3d at 816—so that Koons also had no reason to check with Ms. Wingert any sooner than June 21, 2012 (assuming that she got the June 15, 2012, letter before June 21, 2012, and the record is silent on that point) to see if Ms. Wingert was actually going to file Koons's § 2255 Motion and no timely warning that she might need to find another attorney to file her § 2255 Motion.

Furthermore, to the extent that the respondent argues that there were no "extraordinary circumstances" preventing Koons from filing her § 2255 Motion between June 21, 2012, and October 9, 2012, the respondent has pointed to nothing in the record that generates a genuine issue of material fact that Koons knew that the actual deadline for her § 2255 Motion was not June 21, 2012, but July 7, 2012. Nor has the respondent pointed to anything in the record that generates a genuine issue of material fact that Koons knew that there might be any basis, legal or equitable, for excusing a belated § 2255 Motion. Koons has met her burden, at least at summary judgment, to show that the "extraordinary circumstances" that prevented her from timely filing her § 2255 Motion

13

continued *after* her actual deadline, and the respondent has failed to meet its burden to generate genuine issues of material fact that the post-deadline delay was *not* the result of "extraordinary circumstances." *See Torgerson*, 643 F.3d at 1042-43.

### 2. *"Diligence"*

Although the respondent does not contest or only partially contests Koons's assertion that "extraordinary circumstances" prevented the timely filing of her § 2255 Motion or caused the post-deadline delay in the filing of that motion, the respondent clearly does dispute Koons's "diligence" in pursuing her § 2255 Motion. *See Muhammad*, 735 F.3d at 815 (identifying the two prongs of an "equitable tolling" claim as "extraordinary circumstances" and "diligence"). As the Eighth Circuit Court of Appeals has explained,

> "The diligence required for equitable tolling purposes is 'reasonable diligence' not 'maximum feasible diligence.'" *Holland*, 130 S.Ct. at 2565 (internal citations and quotation marks omitted). In *Holland*, the Supreme Court decided the habeas petitioner had acted with reasonable diligence when he wrote his attorney numerous letters requesting information and providing direction; repeatedly contacted state courts, state court clerks, and the state bar association in an attempt to have his attorney removed from the case; and prepared his own habeas petition and filed it on the very day he discovered he was out of time. *Id*.
>
> This court has found a section 2255 movant demonstrated diligence when he hired counsel well ahead of the deadline, "did everything in [his] power to stay abreast of the status of his case," provided original documents to his attorney to assist with the motion, filed a complaint with the state bar, and filed motions with the district court seeking an extension of time and the return of documents submitted to the attorney. *Martin*, 408 F.3d at 1095.

14

*Muhammad*, 735 F.3d at 816-17; *accord Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008) ("'Due diligence therefore does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option.' *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002). But, it does at least require that a prisoner make *reasonable* efforts to discover the facts supporting his claims. *Id*." (emphasis in the original)).

In *Muhammad*, the court concluded that the prisoner had not acted diligently, because he did nothing to monitor the status of his case, but simply assumed "inexplicably" that his attorney's failure to respond to his inquiries meant that the attorney "was working on his case." *Id*. at 817. The court contrasted that conduct with another prisoner's attempts to contact the court to determine if his attorney had filed his § 2255 Motion, which the court described as "an action that certainly would fall under 'reasonable diligence' in th[at] case." *Id*. (citing *Anjulo–Lopez*, 541 F.3d at 819). The court noted that, even after learning of his deadline, the prisoner in *Muhammad* did not file his § 2255 Motion "immediately" and that the time for filing expired in the interim between his learning of the deadline and his submission of the motion. *Id*.; *see also Deroo v. United States*, 709 F.3d 1242, 1246 (8th Cir. 2013) (holding that a prisoner had failed to demonstrate "diligence" for purposes of equitable tolling for the same reason that he had failed to show "diligence" to invoke the statute of limitations under § 2255(f)(4), where he had waited several years before pursuing expungement of his disciplinary actions); *Anjulo-Lopez*, 541 F.3d at 818-19 (finding that the prisoner had not used reasonable efforts to discover the facts underlying his claim, so he had not acted diligently, where he waited an entire year before he even tried to contact his attorney about his appeal, and the lack of any notice of appeal was a matter of public record, which a duly diligent person in the prisoner's position could have discovered).

It is clear, however, that "immediate" filing of a § 2255 Motion, after an attorney has failed to do so, is not the only way in which a prisoner can act "diligently," but that "diligence" depends upon the circumstances faced by the prisoner. *See Muhammad*, 735 F.3d at 817 (noting that contacting the court to determine if an attorney had filed a § 2255 Motion for a prisoner would fall under "reasonable diligence," in the circumstances described in *Anjulo-Lopez*, 541 F.3d at 819, and concluding, in the case before it, that the prisoner had not acted diligently because he had not "immediately" filed his § 2255 Motion when his deadline had not yet expired). Indeed, in *Martin*, the Eighth Circuit Court of Appeals found that the prisoner had acted diligently, even though his deadline to file his § 2255 Motion passed on March 12, 2003, where his attorney had told him that there was no deadline, and the prisoner did not file a *pro se* § 2255 Motion until August 1, 2003. 408 F.3d at 1091-92. The court in *Martin* focused on the prisoner's "diligence" in making inquiries of his attorney, not the amount of time that expired between when he heard from other sources that he had a one-year deadline to file until he actually filed his § 2255 Motion. *Id*. at 1095. Here, the respondent has cited no controlling authority, and I have so far found none, suggesting that there is some bright line rule about when an unduly long period has passed between expiration of the deadline and a prisoner's *pro se* § 2255 Motion, so that the passage of a certain amount of time would necessarily demonstrate lack of diligence.

Again, the respondent has pointed to nothing in the record that generates a genuine issue of material fact that Koons knew that the deadline for her § 2255 Motion was not June 21, 2012, but July 7, 2012. Nor has the respondent pointed to anything in the record that shows that Koons knew that there might be any basis, legal or equitable, for excusing a belated § 2255 Motion filed after what she had been told was the deadline by an attorney hired to represent her on a § 2255 Motion. *See Torgerson*, 643 F.3d at 1042-43. The Eighth Circuit Court of Appeals has expressly recognized that "'[d]ue diligence . . . does

16

not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option.'" *Anjulo-Lopez*, 541 F.3d at 818 (quoting *Aron*, 291 F.3d at 712). The record suggests that Koons reasonably believed that filing a § 2255 Motion after June 21, 2012, would be futile.

Furthermore, in the circumstances presented here, I do not believe that due diligence requires a prisoner to undertake "immediately" what she has been led to believe would be a futile attempt to file a belated § 2255 Motion. A prisoner like Koons, who is in custody, has limited access to *reliable* sources of information about § 2255 proceedings; she had to come to the conclusion that, notwithstanding the lack of a timely § 2255 Motion filed by her attorney or by another attorney that she has been told by her attorney would "handle" her "file" in a timely manner, filing an untimely § 2255 Motion would not be "futile"; and she then had to file a *pro se* § 2255 Motion. I have known assistant United States attorneys who have routinely made untimely filings, even though they undoubtedly know better, and they do not have the excuse of lack of legal resources. The respondent's argument that Koons necessarily was not "diligent," because three months passed between the expiration of her deadline and the filing of her *pro se* § 2255 Motion is an argument that seems to me to be based more on "maximum feasible diligence" than "reasonable diligence." *Muhammad*, 735 F.3d at 816 (explaining that only "reasonable diligence," not "maximum feasible diligence" is required (citing *Holland*, 130 S.Ct. at 2565)).

The critical lacunae in the present record, however, are that nothing indicates the content of the conversation that Koons had with Ms. Wingert on June 21, 2012, or precisely what transpired between June 21, 2012, and October 1, 2012, when Koons signed and submitted her *pro se* § 2255 Motion. Certainly, there is nothing in the record about the conversation between Koons and Ms. Wingert, or about any other circumstances, that suggests that Koons knew as of June 21, 2012, that she actually had

17

until July 7, 2012, to file her § 2255 Motion; that she could attempt to file what she understood was an untimely § 2255 Motion after June 21, 2012 (or after July 7, 2012), based on equitable tolling; that filing what Koons understood was an untimely § 2255 Motion would not necessarily be futile; or when and why Koons eventually decided to sign and submit her § 2255 Motion on October 1, 2012. The fact that the respondent (or the court) can now imagine things that Koons could have done earlier than October 1, 2012, simply does not demonstrate that Koons necessarily did not act diligently. By pointing to the lack of explanation for the delay from June 21, 2012, to October 1, 2012, however, the respondent has generated a genuine issue of material fact as to whether Koons acted "diligently" during that period.

### *3. Disposition*

In summary, I conclude, as a matter of law, that Koons was prevented by the "extraordinary circumstances" of her attorney's misconduct from filing a timely § 2255 Motion. On the other hand, I conclude that the respondent has generated a genuine issue of material fact as to whether Koons acted "diligently" after June 21, 2012, so that Koons's Motion For Summary Judgment must be denied. *See Torgerson*, 643 F.3d at 1042-43 (for summary judgment to be proper, the non-movant must not only fail to generate genuine issues of material fact, but the movant must be entitled to summary judgment as a matter of law). I conclude that there are holes in the present record concerning, at least, the following issues: (1) what Koons knew as of June 21, 2012, about the deadline for filing her § 2255 Motion; (2) what she knew and when about the viability of a belated § 2255 Motion; and (3) what transpired during the 3-month period between June 21, 2012, which Koons thought was the deadline for filing her § 2255 Motion, and October 1, 2012, when she actually signed and submitted her § 2255 Motion. Because I find that the record is incomplete on the question of equitable tolling, and—at least as importantly—because I cannot judge on a summary judgment motion the

18

credibility of any explanation for the passage of time from expiration of the perceived deadline and the filing of the § 2255 Motion, I simply conclude that Koons has made sufficient *prima facie* showing that the statute of limitations should be equitably tolled in this case. Consequently, I will reserve the determination of her claim of equitable tolling until that issue is submitted along with the merits of her claims of ineffective assistance of counsel. Indeed, it is possible that the record will ultimately reveal that Koons's ineffective assistance claims are without merit, mooting the question of the timeliness of her § 2255 Motion. Although I will not dismiss her § 2255 Motion as untimely, neither will I grant Koons's Motion For Summary Judgment that equitable tolling applies to her § 2255 Motion.

### III. CONCLUSION

Upon the foregoing,

1. The respondent's January 1, 2013, Motion To Dismiss (docket no. 8), upon which I previously reserved ruling, is now **denied**;

2. Koons's July 30, 2013, Motion For Summary Judgment Re: Equitable Tolling Issue (docket no. 15) is also **denied**, and the issue of equitable tolling is reserved for submission with the merits of Koons's claims of ineffective assistance of counsel;

3. The parties shall submit briefs for submission of this case on the merits of Koons's claims of equitable tolling and ineffective assistance of counsel according to the following schedule:

    a. Koons shall have **to and including March 3, 2014,** to file her brief on equitable tolling and her claims for § 2255 relief;

    b. The respondent shall have **to and including March 31, 2014,** to file a responsive brief; and

c. Koons shall have **to and including April 21, 2014,** to file any reply brief.

**IT IS SO ORDERED**.

**DATED** this 31st day of January, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA